UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------
UNITED STATES OF AMERICA,

                                     **MEMORANDUM & ORDER**

          - against -              22-CR-381 (MKB)

MURPHY BONEY,

                  Defendant.
--------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

      Murphy Boney pled guilty on July 25, 2023 to one count of possessing and brandishing a

firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and

924(c)(1)(A)(ii).  (Indictment 3, Docket Entry No. 22; Min. Entry dated July 25, 2023.)  On

February 6, 2024, the Court sentenced Boney to eighty-four months of imprisonment, to be

followed by two years of supervised release.  (J., Docket Entry No. 45.)  The Court also ordered

Boney to pay restitution in the amount of $5,950.  (*Id.*)

      On November 4, 2024, Boney filed a motion for compassionate release pursuant to 18

U.S.C. § 3582(c)(1)(A)(i).  (Def.'s Mot. for Compassionate Release ("Def.'s Mot."), Docket

Entry No. 53.)  On November 15, 2024, the government opposed Boney's motion.  (Gov't Opp'n

to Def.'s Mot. ("Gov't Opp'n"), Docket Entry No. 56.)  For the reasons set forth below, the

Court denies Boney's motion.

## I.  Background

      On June 8, 2022, Boney and his co-defendant Dimel Hickman robbed two individuals at

gunpoint in Queens, New York, after following them from their workplaces in Manhattan's

Diamond District.  (Presentence Investigation Report ("PSR") ¶¶ 11–13, 16–19, Docket Entry

No. 34.)  In the first robbery, Boney and Hickman robbed John Doe #3 of a bag containing personal documents at the door of his residence.  (*Id.* ¶ 11.)  Both Boney and Hickman were holding handguns during the robbery.  (*Id.*)  In the second robbery, Boney and Hickman approached John Doe #4 in the 75th Avenue subway station, struck him in the head with their handguns, and pushed him against the wall.  (*Id.* ¶ 12.)  They removed a watch and necklace from John Doe #4's person and approximately $1,200 in cash he was carrying from his jewelry business.  (*Id.*)  Surveillance footage captured both incidents.  (*Id.* ¶¶ 11, 13.)

As part of their investigation into similar robberies of five additional John Does from May to July of 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") and the New York City Police Department (the "NYPD") identified the roles of Boney and Hickman in the June 8, 2022 robberies.[1]  (*Id.* ¶¶ 14–25.)  ATF and NYPD used Boney and Hickman's New York City Transportation Authority farecards and surveillance footage to locate them leaving Rockefeller Center in Manhattan and arriving in Forest Hills, Queens at approximately the same time as John Doe #3, and later returning to Rockefeller Center and then going back to Queens at the same time as John Doe #4.  (*Id.*)  Boney's and Hickman's farecard histories show that they left Rockefeller Center at the same time and boarded the same Q64 bus as John Doe #3, and surveillance footage shows they were later on the same subway platform as John Doe #4 at Rockefeller Center.  (*Id.* ¶¶ 17–19.)  On July 8, 2022, Boney's former local parole officer identified Boney in the surveillance footage of the robberies and from in and around various subway stations throughout June 8.  (*Id.* ¶¶ 20–21.)

---

[1]  At sentencing, the Court did not consider "any specific facts as to how [Boney] engaged with regard to John Does 1, 2, 5, 6, and 7," (Tr. of February 6, 2024 Sentencing ("Sent'g Tr.") 16:19–20), but noted that Boney did agree to pay restitution to John Does 1 through 7.  (*Id.* at 14:18–24.)

On July 21, 2022, Boney was arrested on the street in New York.  (*Id.* ¶ 26.)  Officers seized a diamond cocktail ring and diamond and emerald earrings from Boney.  (*Id.*)  In his plea agreement, Boney stipulated that on June 8, 2022, he used, carried, and brandished a firearm during and in relation to Hobbs Act robberies.  (*Id.*)  On February 6, 2024, the Court sentenced Boney to eighty-four months of imprisonment and two years of supervised release.  (J. 2–3.)  The Court ordered Boney to pay restitution in the amount of $5,950 and a special assessment fee of $100.  (*Id.* at 6–7.)  The Court also ordered the Bureau of Prisons (the "BOP") to comply within a month with the medical treatment recommendation pertaining to a preexisting injury to Boney's knee that had worsened while he was detained.  (*Id.* at 2.)

On November 4, 2024, Boney filed a motion for compassionate release.  In support of his motion, Boney argues that his medical problems and lack of proper medical care establish extraordinary and compelling reasons justifying compassionate release and that the section 3553(a) factors support his release.  (Def.'s Mot. 6–13.)

The government opposes Boney's motion, arguing that Boney has not exhausted his administrative remedies, failed to demonstrate extraordinary and compelling circumstances for his release, and has not shown that the section 3553(a) factors warrant his release.  (Gov't Opp'n 7–13.)

## II.  Discussion

### a.  Standard of review

"[O]ther than the limited exceptions provided by statutes . . . courts are not free to modify sentences at will."  *United States v. Martin*, 974 F.3d 124, 135 (2d Cir. 2020); *see United States v. Boyle*, No. 03-CR-970, 2024 WL 4836339, at *2 (E.D.N.Y. Nov. 20, 2024) ("A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." (quoting

*United States v. Applewhite*, No. 17-CR-142, 2020 WL 7356615, at *3 (E.D.N.Y. Dec. 15, 2020))).  "A district court may, in an exercise of its discretion, reduce an inmate's term of imprisonment by granting a motion brought under 18 U.S.C. § 3582(c)(1)(A) — the 'compassionate release' provision . . . ."  *United States v. Van Der End*, No. 21-2079, 2023 WL 193633, at *1 (2d Cir. Jan. 17, 2023).  "[T]here are three requirements that must be satisfied before a court can grant such relief" — namely, (1) "absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities"; (2) "a court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable'"; and (3) "the inmate must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed."  *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam) (alterations in original) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also, e.g.*, *United States v. Barnett*, No. 21-2319, 2023 WL 2375684, at *1 (2d Cir. Mar. 7, 2024) (quoting *Keitt*, 21 F.4th at 71); *United States v. Isaac*, No. 22-2758, 2024 WL 1597614, at *2 (2d Cir. Apr. 12, 2024) (same); *United States v. Fox*, No. 22-10, 2023 WL 379539, at *1 (2d Cir. Jan. 25, 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); *United States v. Davis*, No. 21-716, 2022 WL 1320316, at *2 (2d Cir. May 3, 2022) (citing *Keitt*, 21 F.4th at 71); *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (per curiam); *United States v. Cummings*, No. 20-3156, 2021 WL 4142844, at *1 (2d Cir. Sept. 13, 2021); *United States v. DiBiase*, 857 F. App'x 688, 688–89 (2d Cir. 2021); *United States v. Fernandez*, 853 F. App'x 730, 731–32 (2d Cir. 2021); and *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020).

    If a defendant cannot satisfy the applicable section 3553(a) sentencing factors, then a

4

district court "need not determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *United States v. Mayes*, No. 23-6077, 2024 WL 2990909, at *2 (2d. Cir. June 14, 2024) (quoting *Keitt*, 21 F.4th at 73); *United States v. Wofford*, No. 22-2811, 2024 WL 1298468, at *2 (2d Cir. Mar. 27, 2024) (same); *Van Der End*, 2023 WL 193633, at *1 (same); *see Jones*, 17 F.4th at 374 (noting that because "extraordinary and compelling reasons are necessary — but not sufficient — for a defendant to obtain relief . . . , panels of this [c]ourt have, in non-precedential summary orders, assumed the[ir] existence . . . but held that a district court's 'reasonable evaluation of the [applicable] [s]ection 3553(a) factors' is 'an alternative and independent basis for denial of compassionate release'" (quoting *United States v. Robinson*, 848 F. App'x 477, 478 (2d Cir. 2021))).

**b.  Administrative exhaustion**

Boney argues that he has exhausted his administrative remedies.  (Def.'s Mot. 6.)  Boney requested a review of his compassionate release on May 20, 2024, after he suffered a stroke.  (Gov't Opp'n 7.)  Boney renewed his request on August 28, 2024, after he had a heart attack.  (Def.'s Mot. 6; Request for review of compassionate release, annexed to Def.'s Mot. as Ex. C, Docket Entry No. 53.)  The Warden of FCI Atlanta denied Boney's request for compassionate release on October 4, 2024 based on Boney's May 20, 2024 request, rather than based on his August 28, 2024 request.  (Gov't Opp'n 7; Denial of request for review of compassionate release, annexed to Def.'s Mot. as Ex. D, Docket Entry No. 53.)

The government contends that Boney has not exhausted his administrative remedies.  (Gov't Opp'n 7.)  In support, the government argues that because the Warden's October 4 denial was based on Boney's May 20 request, the "Warden's denial did not capture all bases for

5

Boney's request," and Boney has therefore not exhausted his administrative remedies.  (*Id.* at 7.)

Section 3582(c) permits a defendant to file a motion for compassionate release after "the defendant has fully exhausted all administrative rights . . . *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  18 U.S.C. § 3582(c)(1)(A) (emphasis added); *United States v. Haney*, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020) (holding that section 3582(c)(1)(A) "requires the defendant *either* to exhaust administrative remedies *or* simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court").  *Cf. United States v. Rounds*, No. 21-2686, 2022 WL 17684589, at *1 (2d Cir. Dec. 15, 2022) (holding that to satisfy section 3582(c)(1)(A), a "defendant must fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or 30 days must lapse "from the receipt of such a request by the warden of the defendant's facility") (quoting 18 U.S.C. § 3582(c)(1)(A) ) (alterations omitted); *United States v. Reid*, No. 05-CR-5961, 2021 WL 837321, at *4 (E.D.N.Y. Mar. 5, 2021) (same).[2]

---

[2]  The Court notes that district courts in the Second Circuit have diverged in their interpretations of the provision allowing a defendant to move for compassionate release "after . . . the lapse of 30 days from the receipt of such a request by the warden."  18 U.S.C. § 3582(c)(1)(A); *United States v. Saladino*, 7 F.4th 120, 123–24 (2d Cir. 2021) (recognizing without resolving the split among the district courts).  Some district courts have concluded that the statute authorizes a defendant to file a motion regardless of whether the warden responds to the defendant's request, while other district courts have found that the thirty-day waiting period applies only when the BOP does not respond to the request.  *Compare United States v. Lajaward*, No. 15-CR-235, 2023 WL 5970962, at *2 n.1 (S.D.N.Y. Sept. 14, 2023) (holding that the thirty-day "waiting period authorizes the defendant to file a motion regardless of whether the warden responds to the defendant's request for compassionate release") *with United States v. Morales*, No. 12-CR-322-9, 2023 WL 4764054, at *2 (S.D.N.Y. July 26, 2023) (holding that a defendant had not exhausted her administrative remedies because she did not allege that she appealed the warden's denial of her request for compassionate release); *United States v. Samuels*, No. 08-CR-789, 2020 WL 7696004, at *3 (S.D.N.Y. Dec. 28, 2020) (holding that after a warden timely denies a defendant's request for compassionate release, the defendant must exhaust further administrative rights to appeal, including to the BOP Regional Director and the BOP General Counsel); *and United States v. Kissi*, 469 F. Supp. 3d 21, 32 (E.D.N.Y. 2020)

Boney submitted his second letter requesting review of his compassionate release on August 28, 2024 and filed a motion for compassionate release with the Court sixty-eight days later on November 4, 2024.  Boney's motion was thus timely filed more than thirty days after he submitted his second request to the Warden.  *See United States v. Colon-Cruz*, No. 19-CR-911, 2024 WL 2786781, at *1 (S.D.N.Y. May 28, 2024) (concluding that a defendant satisfied the administrative exhaustion requirement because "[m]ore than 30 days lapsed from the date of [the defendant's] administrative application to the filing of his [compassionate release] motion"); *United States v. Alamo*, 588 F. Supp. 3d 300, 303 (E.D.N.Y. 2022) (holding that a defendant had standing to bring a motion for compassionate release because more than thirty days had passed since he asked the warden of his facility to review his request for compassionate release); and *Reid*, 2021 WL 837321, at *5 (holding that the defendant "satisfied the exhaustion requirement because more than thirty days have lapsed since his renewed request . . . ." for compassionate release).

### c.   The section 3553(a) factors do not favor release

In support of his motion for compassionate release, Boney argues that the section 3553(a) factors support his release.  (Def.'s Mot. 6–7.)  In support, Boney argues his (1) "impressive rehabilitation while in custody"; (2) "long-standing desire to support his gravely ill mother"; and (3) the fact that he "does not present a danger to the public" all support his release under the 3553(a) factors.  (*Id.*)

The government argues that the section 3553(a) factors "counsel against a release."

---

(concluding that defendants must appeal the BOP's timely denial of a request for review of compassionate release to satisfy section 3582(c)(1)(A)'s exhaustion requirement).  Boney has exhausted his administrative remedies because more than thirty days have passed since he submitted his August 28 request for review of his compassionate release, and the Warden of FCI Atlanta has not responded.

(Gov't Opp'n 11.)  First, the government argues that Boney committed "brazen and horrific armed robberies of multiple victims" despite "being on parole and [having] multiple past convictions."  (*Id.*)  Second, the government contends that "Boney's conduct and extensive criminal history demand the entirety of his seven-year sentence" and that the entire sentence is "necessary to protect the public and deter Boney and others from engaging [in] similar conduct in the future."  (*Id* at 12.)  Finally, the government argues that the seven-year sentence imposed in this case is appropriate given the "kinds of sentence and the sentencing range established for the applicable category of offense."  (*Id.* at 11.)

Although the Court takes seriously Boney's health issues, including the fact that he suffered a stroke and heart attack since entering FCI Atlanta in March of 2024, (Def.'s Mot. 2–4), there are virtually no changes to the 3553(a) factors the Court considered at sentencing in February of 2024.  At sentencing, the Court considered Boney's difficult childhood and adolescence, as well as his recent completion of educational programs and employment as a personal trainer.  (*See* Sent'g Tr. 4:25–5:16; 17:4–8.)  The Court appreciates Boney's rehabilitative efforts, and notes that prior to his current incarceration he "worked consistently, completed educational coursework, and completed NRDAP, a cognitive-behavioral therapy drug treatment program."  (Def.'s Mot. 12.)  The Court also considered at sentencing that Boney has a loving family eager to support him when he is released, (Sent'g Tr. 17:2–4), and his statements to the Court taking responsibility for his actions and that he is "beyond committing crime."  (*Id.* at 8:8–9; 17:22.)

These factors, which the Court already considered at sentencing, do not now warrant Boney's immediate release.  As the Court noted at sentencing, Boney's robberies were "very violent acts," during which Boney followed John Does #3 and #4 home from Midtown to Queens

and struck John Doe #4 in the head with a firearm and pushed him against a wall.  (*Id.* at 11:22–25; 12:9–15.)  After balancing these facts, the Court sentenced Boney to the mandatory minimum eighty-four months for the charge of possessing and brandishing firearms during crimes of violence, concluding that the minimum sentence "is sufficient but not greater than necessary to comply with the purposes of sentencing" and punishes Boney for his crimes, promotes respects for the law, protects the public from future crimes Boney might commit, and will hopefully specifically deter Boney from further crime.  (*Id.* at 17:9–18.)  The Court's sentence was based on many of the same considerations Boney raises in his motion for compassionate release.  (*Id.* at 11:12–15.)  Boney has served fewer than eight months of his seven-year term in custody, and immediate release would not "reflect the seriousness of the offense, . . . promote respect for the law, [or] . . . provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  *See United States v. Ahmed*, No. 21-1215, 2024 WL 1406638, at *1–2 (2d Cir. Apr. 2, 2024) (upholding a district court's denial of compassionate release even where the defendants cited their medical conditions and inadequate medical care in prison because "a district court may deny motions for compassionate release in 'sole reliance' on the § 3553(a) sentencing factors" and there was "nothing in the record to indicate that the district court did not properly consider" the section 3553(a) factors); *United States v. Alba*, No. 21-873, 2023 WL 220988, at *2–3 (2d Cir. Jan. 18, 2023) (finding no error where the district court referenced its balancing of the section 3553(a) factors at the defendant's sentencing and "explained that, based upon his serious offense conduct and prior convictions, '[i]ssues of deterrence and appropriate punishment remain[ed] significant factors to consider in the context of [the defendant's] application'" (first alteration in original) (citation omitted)); *United States v. Amato*, 48 F.4th 61, 63–64 (2d Cir. 2022) (affirming a denial of compassionate release even where the "[g]overnment

conceded that [the defendant's] medical conditions arguably met the threshold requirement of an extraordinary and compelling reason but opposed the motion on the grounds that the § 3553(a) factors weighed against release"); *United States v. Robinson*, No. 21-1865, 2022 WL 2204126, at *3 (2d Cir. June 21, 2022) (holding that the district court did not abuse its discretion in finding that the defendant's "rehabilitation . . . was insufficient to justify relief"); *United States v. Garcia*, No. 21-1181, 2022 WL 2154675, at *2 (2d Cir. June 15, 2022) (affirming denial of compassionate release where the district court acknowledged the defendant's commitment to rehabilitation but concluded that his criminal history and the seriousness of his crime counseled against release); *United States v. Reyes*, No. 20-3285, 2022 WL 1669388, at *1 (2d Cir. May 26, 2022) (affirming denial of compassionate release where the "court acknowledged [the defendant's] efforts toward rehabilitation, [but] nevertheless found that the section 3553(a) factors weighed heavily against a sentence reduction . . . ." in light of the defendant's conduct); *United States v. Williams*, No. 22-4156, 2022 WL 1554649, at *2 (2d Cir. May 17, 2022) (affirming denial of compassionate release where "[t]he district court held that [the defendant] was not entitled to a sentence reduction under the § 3553(a) factors because of the seriousness of his offenses and because the danger to the community outweighed any rehabilitative attempts, given the severity of his offenses which included murder, distributing drugs, and participating in a gang"); *United States v. Israel*, No. 20-3461, 2021 WL 5782072, at *2 (2d Cir. Dec. 7, 2021) (upholding a district court's denial of a motion for compassionate release despite defendant's "debilitating and worsening medical condition" because reducing defendant's sentence "was not warranted after considering the § 3553(a) factors"); and *Cummings*, 2021 WL 4142844, at *2 ("While we commend [the defendant] for his efforts at self-improvement while incarcerated, we conclude that the [d]istrict [c]ourt did not abuse its discretion when it considered these points and

still found that the [s]ection 3553(a) factors weighed against release.").

In addition, the family circumstances Boney raises do not provide grounds for the Court to reach a different outcome in considering the section 3553(a) factors. The Court acknowledges the severity of Boney's mother's stage IV lung cancer and that his mother was recently hospitalized. (Def.'s Mot. 13.) The Court was also aware of Boney's mother's illness at sentencing. (Sent'g Tr. 9:2–6.) Boney has not indicated that his presence is necessary to her care. Boney has two full siblings and two maternal half-siblings, all of whom live in Georgia, where Boney's mother also resides. (PSR ¶¶ 56–57.) While it may impose hardships on these family members to care for Boney's mother due to their work schedules and other personal commitments, Boney has not indicated that they are incapable of providing the care that his mother needs. *See United States v. Mirabal*, No. 16-CR-272, 2023 WL 2401377, at *7–8 (S.D.N.Y. Mar. 8, 2023) (finding that defendant's argument regarding "the need to care for his mother [wa]s not a family circumstance justifying release" since his mother's health condition was not "dire" and he did not indicate that she had no other caregiver). While the Court acknowledges the seriousness of Boney's mother's illness, in view of the severity of Boney's crimes, and the fact that the Court already considered Boney's family circumstances at sentencing, the section 3553(a) factors do not weigh in favor of his release. *See United States v. John*, No. 15-CR-208, 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (noting that courts may only grant compassionate release "where the family circumstances are truly 'extraordinary and compelling,' and not merely the inevitable circumstances families face when a family member is incarcerated").

Accordingly, the section 3553(a) factors do not favor release. The Court therefore denies Boney's motion.

   d.  **The Court need not address whether Boney established extraordinary and compelling reasons warranting a sentence reduction**

Because the Court denies Boney's motion based on its evaluation of the section 3553(a) factors, it does not determine whether he has established extraordinary and compelling circumstances based on his arguments about his medical conditions and medical care. *Keitt*, 21 F.4th at 73 ("[W]hen a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction."); *United States v. Mattes*, No. 20-2349, 2022 WL 260395, at *1 (2d Cir. Jan. 28, 2022) ("[A] district court's reasonable evaluation of the [s]ection 3553(a) factors is an alternative and independent basis for denial of compassionate release." (quoting *Jones*, 17 F.4th at 374)); and *Roney*, 833 F. App'x at 853 ("We need not decide whether [the appellant] has proffered an extraordinary and compelling reason that warrants his release . . . because, even assuming *arguendo* that he has, we discern no abuse of discretion in the district court's conclusion that release is nevertheless unwarranted upon consideration of the § 3553(a) factors.").

Even if the Court did find that Boney's medical condition or medical care constituted extraordinary and compelling circumstances, the Court would still deny Boney's motion based on the section 3553(a) factors. *United States v. Souza*, No. 20-3829, 2021 WL 3871262, at *2 (2d Cir. Aug. 31, 2021) (affirming ruling that "even if [a defendant]'s medical conditions demonstrated extraordinary and compelling reasons for release, 'the factors set forth in [section 3553(a)] militate toward continued confinement'" (quoting *United States v. Bolino*, No. 06-CR-806, 2020 WL 4749807, at *2 (E.D.N.Y. Aug. 17, 2020))); *Roney*, 833 F. App'x at 853 (affirming denial of compassionate release where the district court had weighed the defendant's

"serious medical conditions," the "seriousness of his offense conduct," and "the need for his original sentence to remain in place to promote respect for the law and to provide just punishment," among other section 3553(a) factors.

The Court notes, however, that Boney's latest medical records indicate that he does not have any abnormalities or ongoing issues with his brain and has a regular heart rate and rhythm. (Boney Medical Records, annexed to Gov't Opp'n as Ex. 1 1–5, 12–15, 28, Docket Entry No. 56-1.)  As the Government indicated, Boney does not point to any incident where the Bureau of Prisons failed to provide necessary medical care for his stroke and heart attack.  (Gov't Opp'n 10; Def.'s Mot. 9–12.)  Boney was escorted to health services and to the Grady Hospital emergency room both times he experienced left-side weaknesses and stroke-like symptoms, as well as when he had chest pains and a heart attack, and was prescribed medication to manage his ongoing conditions.  (Def.'s Mot. 3–4.; Gov't Ex. 1 39-43.)  Even serious but manageable medical conditions are insufficient to establish extraordinary and compelling reasons for granting compassionate release.  *See United States v. Pouryan*, No. 11-CR-111, 2023 WL 2456503, at *2 (S.D.N.Y. Mar. 9, 2023) (denying motion for compassionate release, in part because although the defendant "[did] suffer[] from many of his alleged medical conditions," his medical records "establish[ed] that he has received regular treatment and care for those conditions"); *Bolino*, 2020 WL 4749807, at *5 (denying compassionate release where a defendant who had Parkinson's and bipolar disease and alleged chronic knee issues, difficulty walking, and tremors in his hand did not amount to "extraordinary and compelling reasons" justifying his release because he managed his diagnoses with medication); and *United States v. D'Acunto*, No. 18-CR-14, 2020 WL 1904007, at *1–2 (S.D.N.Y. Apr. 16, 2020) (denying compassionate release to defendant suffering from stage IV chronic kidney disease).

In addition, although Boney argues that his medical conditions increase his vulnerability to COVID-19, Boney's medical conditions do not warrant reducing his sentence. *See United States v. DiMartino*, No. 21-81, 2022 WL 761511, at *1–2 (2d Cir. Mar. 14, 2022) (affirming denial of compassionate release where defendant suffered from "asthma, hypertension, obesity, sleep apnea, heart disease, and high cholesterol" and alleged that this put him "at a higher risk of complications from COVID-19"). Boney has also received two COVID-19 vaccinations, (Boney Medical Records, annexed to Def.'s Mot as Ex. A. 3, Docket Entry No. 53), reducing the risks associated with COVID-19. *See United States v. Hunter*, No. 21-1773, 2022 WL 2288688, at *2 (2d Cir. June 24, 2022) (affirming denial of compassionate release where defendant had "underlying medical conditions" but was "protected against the COVID-19 pandemic with two doses of the . . . vaccine" and noting that "the vaccine remains a highly effective means of preventing the most severe effects of COVID-19" (collecting cases)); *United States v. Jeffries*, No. 14-CR-6001, 2022 WL 2036331, at *1 (W.D.N.Y. June 7, 2022) ("Furthermore, . . . [the defendant] has been twice vaccinated for the virus and that fact alone warrants dismissal of this motion . . . ."); *United States v. Patel*, No. 21-1746, 2022 WL 1634454, at *2 (2d Cir. May 24, 2022) ("[B]ecause [the defendant] has now been vaccinated, any risk of severe illness from COVID-19 has been substantially decreased." (citations omitted)); and *United States v. Reiter*, No. 87-CR-132, 2021 WL 1424332, at *7–8 (S.D.N.Y. Apr. 15, 2021) (noting that obesity put defendant at increased risk of severe illness from COVID-19 but that the risk was reduced because the defendant was vaccinated and the spread of the virus at his facility was controlled).

However, the Court finds that BOP violated the February 6, 2024 Order to "comply with the medical treatment recommendation pertaining to Defendant's knee, within one month." (J. 2.) When BOP transferred Boney out of the MDC at Brooklyn, he was transferred with an Intra-

System Transfer request for an orthopedic consultation that has still not taken place.  (Intra-System Transfer, Ex. A 2–3; Def.'s Mot. 2.)  Boney's knee has worsened and he can no longer put weight on it.  (Def.'s Mot. 2; Gov't Ex. 1 1 ("Has known meniscal injury to L knee, minor L knee pain but again unch[an]ged.").)  The Court is not convinced, and Boney does not argue, that BOP's failure to comply with the Court's February 6, 2024 Order and Boney's worsening knee condition amounts to an extraordinary and compelling reason for release.  *Cf. United States v. Almontes*, No. 05-CR-58, 2020 WL 1812713, at *6–8 (D. Conn. Apr. 9, 2020) (finding that extraordinary and compelling reasons warranted a sentence reduction for an individual who would soon become paralyzed without spinal surgery, and where, despite numerous assurances, BOP had failed to schedule the individual's spinal surgery for over five years).

  Although the Court does not decide whether Boney's medical condition or medical treatment constitutes extraordinary and compelling reasons for a sentence reduction, the Court recognizes the seriousness of Boney's injury and directs BOP to comply with the February 6, 2024 Order within 30 days of the filing of this Memorandum and Order.

### III.  Conclusion

  For the foregoing reasons, the Court denies Boney's motion for compassionate release. The BOP is further ordered to comply with the Court's February 6, 2024 Order requiring it to comply with the medical treatment recommendation for Boney's knee within thirty days.

Dated:  December 10, 2024
   Brooklyn, New York

        SO ORDERED:


        _____/s MKB_____
        MARGO K. BRODIE
        United States District Judge